George **RUZYNSKI,** Relator,

v.

**BEMIS PACKAGING PLANT OF BEMIS COMPANY, INC., et al.,** Respondents.

**No. 49901.**

Supreme Court of Minnesota.

Jan. 11, 1980.

Daniel T. Cody, St. Paul, for relator.

Donald W. Anderson, Minneapolis, for respondents.

SHERAN, Chief Justice.

Certiorari to review a decision of the Workers' Compensation Court of Appeals in which the majority of that court determined that employee has not been disabled since May 13, 1977, the date on which the employer-insurer discontinued payment of benefits for temporary total disability, except for an undetermined period of time following surgery on his left shoulder on September 20, 1978. Our review of the record compels us to agree with the dissenting member, Judge James Pomush, that employee was temporarily partially disabled during at least some of the time between May 13, 1977, and September 20, 1978.

Employee operated an extrusion machine in the employer's packaging plant. His work required him to raise buckets of pellets weighing 50 or 60 pounds above his head and empty them into the machine and at the end of the process to remove rolls of plastic sheets or tubing weighing from 130 to 600 pounds. He could remove some of the rolls at chest level but had to remove others by lifting them over his shoulder. While working in February 1976 he slipped and fell on his left shoulder and back. He missed only 2 days of work but had some discomfort in his shoulder from then on. On July 11, 1976, he injured his neck, left arm, and left shoulder when he tried to grab a 600-pound roll of plastic which had slipped and begun to roll away from a scale on which he had attempted to place it. He was unable to continue working and the employer-insurer paid compensation for temporary total disability from July 25, 1976, to May 12, 1977. At that time they filed notice of intention to discontinue compensation based on the opinion of Dr. Joseph Tambornino, who had adversely examined employee on May 2, 1976, that employee had a 5-percent permanent partial disability of his left arm but was able to work with no physical restrictions.

In August 1977 employee began a course in meat processing for which he was subsequently certified by the Division of Vocational Rehabilitation, and in September 1977 he filed a claim petition seeking retraining benefits and temporary total disability compensation from May 13, 1977. The employer-insurer disputed employee's right to either although they now contest only the employee's entitlement to further disability compensation.

A hearing on the claim petition was conducted on April 6, 1978. The medical evidence was in conflict both on the nature of employee's injury and its effects. Following the July incident he had gone to the University Hospitals where the shoulder was X-rayed, but the nature of the injury was not disclosed. Employee's ability to raise his arm and to move his shoulder was extremely restricted, so drugs were injected into the shoulder in an unsuccessful attempt to free it. In September 1976 employee was referred to the orthopedic clinic where Dr. James H. House, a board-certified orthopedic surgeon and an associate professor at the University Medical School examined him. Dr. House testified that he could not make a definitive diagnosis other than that employee had an adhesive capsulitis. He suspected, however, that employee might have a tear in the rotator cuff, the tendons reinforcing the upper half of the capsule of the shoulder joint. Employee did not improve following physical therapy, so a procedure to distend and manipulate his shoulder was performed. An arthrogram was also performed but did not disclose the suspected tear of the rotator cuff. The manipulation resulted in improved motion and in the succeeding month the pain in employee's acromial-clavicular joint improved somewhat. He continued to have pain beneath the acromion, however, and Dr. House felt that he had a bursitis syndrome which still suggested a tear in the rotator cuff. The doctor advised employee not to return to heavy manual labor or work requiring overhead movements, but said that if employee could find work subject to these restrictions he could have returned to work in November 1976. In April 1977 it was the doctor's opinion that employee could attempt retraining to become a meat cutter subject to those restrictions. Based on employee's history of the injuries he had sustained in February and July 1976 and the findings of limited movement and pain in his left shoulder, Dr. House concluded that employee's disability was causally related to those injuries.

Dr. Tambornino, also a board-certified orthopedic surgeon and an assistant professor at the University Medical School, did not agree that employee had sustained a tear in the rotator cuff, in part because Dr. Tambornino found no atrophy of the muscles about employee's shoulder and because the arthrogram had not revealed a tear. In his opinion employee had sustained a contusion of the left shoulder or a strain of the shoulder joint, injuries which he said would heal in 3 to 6 weeks. He said employee's complaints were entirely subjective and not entirely consistent, but, based on them, he estimated that employee had sustained a 5-percent permanent partial disability of the left arm as a result of the shoulder injury.

Employee himself testified at the hearing in April 1978 that with the passage of time he had noticed some improvement in the motion of his shoulder but the pain in it had not lessened. He was still under the care of Dr. House and did prescribed exercises daily. He testified that even though he could not lift his left arm above shoulder level and could not pull with it, he was not having difficulty in the retraining course because his partner did the necessary carrying. He testified that he could not obtain work like that he had been doing because of the restrictions imposed by Dr. House against lifting and overhead movement, that he had unsuccessfully tried to get work as a truckdriver, and that he had consulted an employment service without response. Prior to his injury employee had received a wage of $230 for a 42-hour week, or approximately $5.50 an hour.

On the question of whether employee was able to obtain employment in the competitive labor market following May 12, 1977,

the evidence was also in conflict. JoAnne Koralesky, a vocational rehabilitation counselor for the Division of Vocational Rehabilitation, expressed the opinion that employee could not find competitive employment without retraining. Her only effort to aid employee in obtaining work, however, had been to write to the employer in January 1977 asking if it could offer employee a lighter job at the same rate of pay. (The employer had moved its plant to St. Louis in August 1976 and she got no response to her inquiry.) Michael Graham, a vocational counselor for the Department of Employment Services, expressed the opinion that, even with the restrictions imposed by Dr. House, employee could obtain a job in the competitive labor market which would pay up to $4.50 an hour.

On the basis of this evidence, Compensation Judge George B. Humm found that employee had been temporarily totally disabled from May 13, 1977, through April 6, 1978, the date of hearing, and continued to be disabled. He also found employee entitled to retraining, and the employer-insurer appealed.

After the hearing before the compensation judge employee completed the retraining course and obtained employment as a meat processor. On August 22, 1978, he returned to Dr. House complaining of increased pain in his left shoulder and decreased ability to lift weights (from 50 to 30 pounds). The doctor then determined that surgery should be performed. As a consequence, the court of appeals continued its hearing on the employer-insurer's appeal and ordered that in the interests of justice additional testimony be taken from Dr. House and from an orthopedic surgeon of the employer-insurer's choice following the surgery.

The surgery was performed September 20, and Dr. House found a thickened area in the rotator cuff which with arm movement would impinge on the ligamentous area between the acromion and coracoid. He removed part of the bone and ligament between these bones so that the head of employee's humerus had more open space in which to move. Dr. House did not observe a tear in the rotator cuff, but in his opinion the area of thickened tendon was scar tissue resulting from a partial tear of the cuff which had healed. The surgery relieved the impingement caused by the thickened tendon, and Dr. House testified that it relieved employee's pain and improved his range of motion considerably. Even with the improvement in employee's condition the doctor was of the opinion that employee would always have the same restrictions against work involving overhead lifting and lifting of more than 50 or 60 pounds. It was his opinion on November 6, 1978, that employee could then return to his work as a meat processor subject to those restrictions.

Dr. Tambornino again examined employee on November 9, 1978, and submitted a written report which was admitted into evidence pursuant to the agreement of the parties, apparently in lieu of a deposition. He found no evidence of atrophy in employee's left shoulder muscles and said that employee could forward flex his shoulder but had variable ability to raise his arm. It was Dr. Tambornino's impression that employee was not making full effort at active motion and he felt that employee would regain full motion and could return to work shortly. In spite of the findings on surgery, he still held the opinion that employee had suffered only a contusion to his left shoulder.

After considering the record, augmented by the supplemental deposition and report, the court of appeals vacated the compensation judge's finding that employee had been temporarily totally disabled on May 13, 1977, when the employer-insurer discontinued compensation. The evidence clearly permitted the finding that employee was not so disabled, since neither medical expert said that employee could do no work and one vocational expert testified that jobs were available even if employee were restricted to work not requiring heavy lifting and overhead movement.

■ We are convinced, however, after reviewing the evidence that it did not permit a finding that employee was in no degree

disabled and instead requires a finding that he was temporarily partially disabled at the time the employer-insurer discontinued compensation and thereafter at least until he completed the retraining course. Our conclusion follows from the fact that the testimony of Dr. House and Mr. Graham supplies the necessary elements of temporary partial disability. The court of appeals' determination that employee was not so disabled is based on its acceptance of Dr. Tambornino's opinion that in May 1977, when he examined employee, employee was capable of doing any kind of work with no physical restrictions.

Although we have recognized that resolution of conflicts in the opinions of medical experts is the province of the court of appeals as trier of fact and have therefore generally refused to disturb findings based on that court's acceptance of the opinion of one medical expert in preference to that of another, such findings cannot be permitted to stand if they are based on opinions which lack a factual basis. *Klapperich v. Agape Halfway House, Inc.*, 281 N.W.2d 675 (Minn.1979). In this case we are required to reject Dr. Tambornino's opinion that employee was in no way disabled because it was based on his diagnosis that employee had suffered no more than a contusion or strain which had healed within 6 weeks after the injury of July 1976. The correctness of that diagnosis is disproved, in part by the evidence adduced at the hearing in April 1978 concerning employee's continuing restriction of motion and pain, by his subsequent need for surgery, and most significantly by the discovery then made of the scar tissue in his rotator cuff, a finding which Dr. House testified was entirely consistent with his early impression that employee had sustained an injury in that area in the incident of July 1976. In light of this evidence we are required to conclude that Dr. Tambornino's opinion lacked factual basis. Thus, the finding that employee was not disabled between May 13, 1977, and September 20, 1978, must be reversed.

The matter is remanded for determination of the extent of employee's temporary partial disability between May 13, 1977, and September 20, 1978, and the extent of his disability following the surgery of that date.

Reversed and remanded.

TODD, J., took no part in the consideration or decision of this case.